UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDRE B. DAVIS,

        Petitioner,

                              CASE NO. 2:10-CV-14917
v.                           HONORABLE LAWRENCE P. ZATKOFF

PATRICIA CARUSO,

        Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

**I.    Introduction**

Andre B. Davis ("Petitioner") has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, essentially challenging his obligation to register as a sex offender under Michigan law. Petitioner pleaded no contest to felonious assault, MICH. COMP. LAWS § 750.82, in the Genesee County Circuit Court and was sentenced to one year in jail (time served) and five years of probation in 2009. In his pleadings, he raises claims concerning the requirement that he register as a sex offender, the voluntariness of his plea, and the effectiveness of appellate counsel. For the reasons stated herein, the Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability and denies Petitioner leave to proceed *in forma pauperis* on appeal.

**II.    Facts and Procedural History**

Petitioner's conviction arises from his actions in sexually assaulting his two minor sons at his home in Flint, Michigan. The state trial court summarized the factual basis for Petitioner's no

contest plea, as derived from the preliminary examination testimony, as follows:

> DeJuan testified that he would spend time at 609 Thomson Street in the City of Flint. That was where Andre Davis lived and Andre was his dad, Andre Davis. And in the summer of 2005 he would spend time there. And he pointed out his father as being in the courtroom at that hearing. Apparently, they would visit the Thomson Street address . . . with his brother Andre. And on occasion he remembers, his words are, "he was messing with me all summer. He messed with my booty in the living room on the couch when I was sleeping." He said, "I feel something going in my booty." On one occasion he said, "he pulled down my pants. I was on my stomach face down." He felt, "a poking in my booty." He saw his dad on top of him. These are his words on page 18, "like when a dog is standing like on his legs, that's how he was on me on the couch." He refers to the booty as a private spot. And he said that defendant was putting his private into his booty.
>
> Then Andre . . . testifies to spending time on Thomson street at his dad's house. Remembers a person touching his butt. He was asked what happened when they touched your butt, and the answer was, "I had a bruise." Said it hurt a little bit. He was asked who was the person that touched your butt and he said, "Him. Question: Him, meaning your Dad? Answer: Yeah." He said – he said it was wet. He was asked, "Did you actually see his private at the time that he stuck his thing in your butt? Answer: I seen it once."

Plea Hrg. Tr. 1/27/09, pp. 20-21.

Petitioner was charged with two counts of first-degree criminal sexual conduct and three counts of second-degree criminal sexual conduct. On January 27, 2009, he pleaded no contest to one count of felonious assault in exchange for the dismissal of the other charges and an agreement that he be sentenced to one year in jail (time already served) and five years probation. On February 20, 2009, the trial court sentenced Petitioner in accordance with his plea agreement. At that hearing, the Court informed Petitioner of the conditions of his probation and notified him that he would be required to register as a sex offender.

Following sentencing, Petitioner raised an objection to the requirement that he register as a sex offender. On October 19, 2009, the trial court clarified its sentence and determined that Petitioner was required to register as a sex offender under the "catchall provision" of the pertinent

statute because the preliminary examination testimony and the factual basis for his plea indicated that his felonious assault conviction arose from sexual assaults upon his two minor sons.

Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals raising challenges to the sex offender registration requirement. The court remanded the case to the trial court "for amendment of the judgment of sentence to include its determination that defendant is sentenced for an offense that falls within MCL 28.722(e)(xi)," but otherwise denied the application for lack of merit in the grounds presented. *People v. Davis*, No. 298336 (Mich. Ct. App. July 9, 2010) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Davis*, 488 Mich. 915, 789 N.W.2d 461 (2010).

Petitioner thereafter filed his federal habeas petition raising the following claims:

ISSUE ONE. The trial court judge allowed me to take a (Cobbs) plea on 1-27-2009 see page #22 of the plea agreement it was accepted when sentencing came changed it upon objection.

ISSUE TWO. The principle NUNC PRO TUNC, the order supplemented the prior order by adding material which was completely omitted.

ISSUE THREE. There is ineffective assistance of appellate counsel to take the case back to the trial court where Petitioner had to raise the issue of what is asked to reverse here today.

Petitioner requests "a reversal in the conviction as far as sentencing where the (Cobbs) should be followed according to evidence of the signed agreement." Petitioner does not seek to withdraw his plea or have a new appeal in the state courts. Respondent has filed an answer to the petition contending that it should be denied for lack of merit. Petitioner has filed a reply to that answer.

**III.    Standard of Review**

Federal law imposes the following standard of review for habeas cases:

3

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the

4

benefit of the doubt.'" *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court recently held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons

5

before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

In this case, the Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented," and the Michigan Supreme Court denied leave to appeal in a standard order. For the reasons that follow, this Court concludes that the state courts' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[1]

**IV.    Analysis**

    **A.    Involuntary Plea Claim**

Petitioner first seems to assert that he is entitled to habeas relief because his no contest plea

---

[1]The Court would reach the same result under a *de novo* standard of review.

was involuntary as he was not given proper notice that one of the consequences of his plea was that he would have to register as a sex offender.

When a habeas petitioner is convicted as a result of a plea, habeas review is limited to whether the plea was made voluntarily, intelligently, and knowingly. *See United States v. Broce*, 488 U.S. 563 (1989); *Boykin v. Alabama*, 395 U.S. 238 (1969). A plea is voluntary if it is not induced by threats or misrepresentations and the defendant is made aware of the direct consequences of the plea. *See Brady v. United States*, 397 U.S. 742, 755 (1970). The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749. The plea is intelligent and knowing where there is nothing to indicate that the defendant is incompetent or otherwise not in control of his or her mental faculties, is aware of the nature of the charges, and is advised by competent counsel. *Id.* at 756. The plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 748.

The state court record reveals that Petitioner's no contest plea was knowing, intelligent, and voluntary. Petitioner was 47 years old at the time of his plea, had prior felony convictions, and was familiar with the criminal justice system. There is no evidence that he suffered from any physical or mental problems which would have impaired his ability to understand the criminal proceedings or the nature of his plea. Petitioner was represented by legal counsel and conferred with counsel during the plea process. The trial court advised Petitioner of his trial rights and the fact that he would be giving up those rights by pleading guilty. The court discussed the charges and the terms of the plea and its direct consequences, including the maximum sentence and the fact that there was a sentencing agreement. Petitioner indicated he understood the terms of the plea, that he was pleading no contest of his own free will, and that he had not been coerced, threatened, or promised

anything else to induce his plea. Moreover, the pre-trial materials provided significant evidence of guilt. Petitioner's plea was knowing, intelligent, and voluntary.

Petitioner claims that his plea was involuntary because he was not properly notified that he would be required to register as a sex offender. A criminal defendant, however, "need only be aware of the direct consequences of the plea" and a trial court "is under no constitutional obligation to inform the defendant of all the possible collateral consequences of the plea." *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). Additionally, the Sixth Circuit has ruled that "[m]atters that are beyond the control or responsibility of the district court are collateral consequences of a conviction or plea." *United States v. Cottle*, 355 F. App'x 18, 20 (6th Cir. 2009) (quoting *El–Nobani v. United States*, 287 F.3d 417, 421 (6th Cir. 2002)). The Sixth Circuit has also characterized sex offender registration requirements as collateral consequences in other situations. *See Leslie v. Randle*, 296 F.3d 518, 522 (6th Cir. 2002) (recognizing registration and notification requirements of a state's sexual predator statute as collateral consequences of a conviction). The requirement that Petitioner register as a sex offender is only a collateral consequence of his no contest plea. Consequently, the trial court was not required to inform him of that requirement in order for the plea to be valid. *See Blumenthal v. Curley*, No. 2:08–CV–14858, 2011 WL 6090183, *6 (E.D. Mich. Dec. 7, 2011) (denying habeas relief on similar claim).

Furthermore, at a minimum, the United States Supreme Court has never held that sex offender registration is a direct consequence of a plea about which a defendant must be informed, and thus the trial court's acceptance of Petitioner's plea without informing him of the registration requirement was neither contrary to nor an unreasonable application of clearly established law sufficient to warrant habeas relief under § 2254(d). *See, e.g., Virsnieks v. Smith*, 521 F.3d 707, 716

(7th Cir. 2008). Lastly, the record reflects that the trial court informed Petitioner of the sex offender registration requirement at the time of sentencing and that he was sentenced in accordance with his plea and sentencing agreement. Petitioner has failed to establish a violation of his constitutional rights. Habeas relief is not warranted on this claim.

### B. Plea Agreement and Sex Offender Registration Claim

Petitioner also seems to assert that he is entitled to habeas relief because the trial court required him to register as a sex offender even though his plea agreement contained no such requirement and the state courts erred in imposing the requirement under state law.

The Michigan Sex Offenders Registration Act ("SORA"), Mich. Comp. Laws § 28.721 *et seq.*, requires persons convicted of certain offenses to register as sex offenders. "However, the Legislature has made clear that the intended purpose of SORA is to protect public safety and monitor those persons who pose a potential danger to children." *See, e.g., People v. Fonville*, 291 Mich. App. 363, 804 N.W.2d 878, 888 (2011). The requirement that a defendant comply with the statutory mandate to register as a sex offender following conviction of a listed offense is not punishment. It is merely a "remedial regulatory scheme furthering a legitimate state interest of protecting the public." *People v. Golba*, 273 Mich. App. 603, 729 N.W.2d 916, 927 (2007) (discussing cases); *see also Lanni v. Engler*, 994 F. Supp. 849 (E.D. Mich. 1998) (finding that SORA is regulatory, not punitive, in nature and rejecting constitutional challenges to the statute). Consequently, any challenge to sex offender registration does not implicate a defendant's underlying conviction, sentence, or liberty interest which would justify federal habeas relief. *See, e.g., Leslie*, 296 F.3d at 521-23 (affirming denial of habeas relief to prisoner who challenged constitutionality of Ohio's sex offender registration law based on finding that he did not meet "in custody"

requirement for habeas review because registration was a collateral consequence of conviction, not a restraint on liberty); *Virsnieks*, 521 F.3d at 718 ("given the habeas statute's 'in custody' requirement, courts have rejected uniformly the argument that a challenge to a sentence of registration under a sexual offender statute is cognizable in habeas"); *Henry v. Lungren*, 164 F.3d 1240, 1241–42 (9th Cir. 1999).

Petitioner cannot prevail on his challenge to the requirement that he register as a sex offender because it is basically a state law claim. It is well-settled that federal habeas relief does not lie for perceived state law errors. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Thus, to the extent that Petitioner asserts a violation of state law, he fails to state a claim upon which habeas relief may be granted.

Furthermore, the record indicates that Petitioner was properly required to register as a sex offender under Michigan law. The relevant statute requires that a defendant register as a sex offender for "[a]ny other violation of a law of this state . . . that by its nature constitutes a sexual offense against an individual who is less than 18 years of age." MICH. COMP. LAWS § 28.722(e)(xi) (now codified at MICH. COMP. LAWS § 28.722(s)( vi )). The sentencing court determines if the crime fits within the catch-all provision and "shall include the basis for that determination on the record." MICH. COMP. LAWS § 769.1(13). Three requirements must be met for this catchall provision to apply: "(1) the defendant must have been convicted of a state-law violation or a municipal-ordinance violation, (2) the violation must, 'by its nature,' constitute a 'sexual offense,'

and (3) the victim of the violation must be under 18 years of age." *Golba*, 729 N.W.2d at 920. Courts must consider the particular facts of a violation when determining whether it fits within the provision. *People v. Anderson*, 284 Mich. App. 11, 772 N.W.2d 792, 795 (2009); *People v. Althoff*, 280 Mich. App. 524, 760 NW2d 764, 770 (2008) (in applying the catch-all provision, "the particular facts of a violation, and not just the elements of the violation, are to be considered").

In this case, the state trial court provided reasons for requiring Petitioner to register as a sex offender at the time of sentencing in February and October, 2009. Those reasons included the fact that Petitioner was convicted of felonious assault and the fact that his conviction arose from the sexual assault of his two minor sons as reflected in the preliminary examination transcript and the factual basis for his plea. Petitioner has failed to establish that the state court erred or, more importantly for purposes of habeas review, that his federal constitutional rights were violated. Habeas relief is not warranted on this claim.

### C. Ineffective Assistance of Appellate Counsel Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise *nunc pro tunc* arguments and case law on appeal to challenge the trial court's amended judgment of sentence which required him to register as a sex offender.

In order to establish ineffective assistance of counsel, a habeas petitioner must show "that counsel's performance was deficient ... [and] that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). In determining whether counsel's performance was deficient,

> [t]he court must ... determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance .... At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the

exercise of reasonable professional judgment.

*Strickland,* 466 U.S. at 690. Judicial scrutiny of counsel's performance is thus "highly deferential." *Id.* at 689. The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the … goal of vigorous and effective advocacy …. Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002); *see also Fautenberry v. Mitchell*, 515 F .3d 614, 642 (6th Cir. 2008). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

The Supreme Court has recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas

review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 788.

In this case, Petitioner has failed to show that by omitting the *nunc pro tunc* arguments he believes counsel should have raised on appeal, appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel presented legitimate issues concerning the sex offender registration requirement and the validity of Petitioner's plea proceedings on direct appeal. Those issues, while not warranting reversal, were substantial and the *nunc pro tunc* arguments that Petitioner believes should have been raised are not obviously stronger. To be sure, the Michigan Court of Appeals specifically remanded the case to allow the trial court to amend the judgment of sentence to reflect the basis for the sex offender registration. Petitioner has failed to demonstrate that appellate counsel was ineffective. Habeas relief is not warranted on this claim.

## V.     Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims in his petition. Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal this decision, a certificate of appealability ("COA") must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When

13

a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37. Having conducted the requisite review, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to his claims. The Court therefore **DENIES** a certificate of appealability.

Lastly, the Court concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal as any appeal cannot be taken in good faith. *See* Fed. R. App. P. 24(a). Accordingly, the Court **DENIES** Petitioner leave to proceed *in forma pauperis* on appeal.

**IT IS SO ORDERED**.

                                                    S/Lawrence P. Zatkoff
                                                    LAWRENCE P. ZATKOFF
                                                    UNITED STATES DISTRICT JUDGE

Dated: October 31, 2012